# SUPREME JUDICIAL COURT,

FOR THE

## EASTERN DISTRICT.

## 1860.

---

## COUNTY OF HANCOCK.

---

### JOHN J. MAY & al. *versus* ISAAC H. THOMAS.

Where a trader's goods, such as are usually kept in a variety store, were attached on mesne process, and sold, by consent of parties, notwithstanding the officer sold them in gross, contrary to the intent of the statute, which requires him, in such case, " in his return, to describe particularly the goods sold, and the price, at which each article or lot, describing it, was sold," such sale will pass the title to a *bona fide* purchaser.

The true rule, as adopted in this State, is, that an officer's sale of goods, by public auction on judicial process, he being authorized by law, and having an official jurisdiction over the proceedings, will pass the debtor's title, to a *bona fide* purchaser, notwithstanding the directions of the law may not have been complied with.

THIS was an action of TRESPASS, brought against the sheriff of the county of Hancock, for certain goods attached by him on a writ, as the property of one E. H. Stockbridge. This case was presented on a statement of the facts, and was elaborately argued in writing by

*Wiswell*, for the plaintiffs, and by

*E. Hale*, for the defendant.

The material facts will be found in the opinion of the Court, which was drawn up by

CUTTING, J.—The facts disclosed in this case, are, in substance, as follows, viz.:—Prior to January 15, 1855, one *E. H. Stockbridge*, residing in Ellsworth, where he occupied a store, was possessed of certain goods and merchandize. On that day, Isaac Fenno, purporting to be his creditor, sued out a writ and delivered the same to one *G. W. Buckmore*, then sheriff of the county, with orders thereon to "attach sufficient property, to wit, goods in and about store and house." And, afterwards, on the same day, Austin Sumner & Co., other creditors, instituted like proceedings. On the first writ, the officer made the following return, viz.:—

"Hancock, ss. March 6, A. D., 1855.—By virtue of this writ, I have attached a stock of goods, valued per invoice at $3357, property of the defendant, and, by agreement of parties, on the 4th day of March, I advertised the same, by posting up notices of the time and place of sale in three public places in the town of Ellsworth, and, on the 6th day of March, I sold said goods to *May & Co.*, through their agent, *E. H. Stockbridge*, for $2300, they being the highest bidder, and, after deducting my fees, there remains in my hands, subject to this judgment, $2260." And, on the second writ, the same return, "subject to the judgment of the first writ." At the April term of this Court, the officer was permitted to amend his returns by annexing thereto the "invoice," at the foot of which was his certificate of the sale, substantially the same, although not so particular, as his returns.

After the sale, the goods remained in *Stockbridge's* store, as a portion of his stock, from which he retailed, professing to act as the agent of the present plaintiffs, until sometime in 1858, when *Anderson, Sargent & Co.*, the present defendants in interest, holding sundry notes against Stockbridge, dated

in July and December, 1857, directed Thomas, the present nominal defendant, to attach the same as the property of Stockbridge, for which act the present suit was commenced.

Hence, the principal question presented is, whether the sale by the sheriff on *mesne process*, as appears from his official returns, was sufficient to pass the legal title in the goods to May & Co., the present plaintiffs.

The officer's return is very defective in many particulars. He attached on the 6th, advertised on the 4th, and sold on the 6th of March. He set up at auction the whole invoice of goods, such as are usually kept in a variety store, and struck them off in gross, thus disposing of property valued at $3357 for $2300; whereas, by the statute of 1841, c. 117, § 10, then in force, "the officer, who shall make such sale, shall, in his return thereof, particularly describe the goods sold, and the price at which each article or lot, describing it, was sold." A provision very necessary to create competition between bidders of ordinary means instead of a few capitalists. But, still, the question returns, did a sale so imperfect pass the title ?

It has been settled, by a series of decisions in this State and Massachusetts, that property of the debtor, capable of a visible possession and delivery, when seized and sold on *execution*, would be transferred to the purchaser, notwithstanding any irregularities in the proceedings of the officer. *Clark* v. *Foxcroft*, 6 Maine, 296; *Tuttle* v. *Gates*, 24 Maine, 395; *Ludden* v. *Kincaid*, 45 Maine, 411; *Titcomb* v. *Union M. & F. Ins. Co.*, 8 Mass., 335. And several reasons have been assigned for such a conclusion. One, by PARSONS, C. J., in *Ladd* v. *Blunt*, 4 Mass., recognized by this Court in *Clark* v. *Foxcroft*, first cited, to the effect, that, "when goods sufficient to satisfy the judgment are seized on a *fieri facias*, the debtor is discharged, even if the sheriff waste the goods, or misapply the money arising from the sale, or does not return his execution."

Another reason was given by PARKER, C. J., in *Howe* v. *Starkweather*, 17 Mass., 343, that, "generally, a purchaser of

chattels at a sheriff's sale, having received the goods and paid for them, will have the property, notwithstanding any irregularity. in the proceedings of the officer making the sale. Purchases would not be made, and the interest of both debtor and creditor would suffer, if sales made by one having lawful authority, and appearing to have exercised it lawfully, should be avoided on account of some irregularity, which could not be known at the time." But the learned Judge proceeds — "even, in such cases, the officer ought to show a compliance with the law, or the purchaser would be unable to maintain his property." Now, it would seem that the latter is, in some sense, in conflict with the former paragraph; for it is difficult to perceive how an irregularity, if substantial, can be compatible with a legal compliance; if not essential, it would be harmless, and such an objection hypercritical. WESTON, J., in *Clark* v. *Foxcroft*, in commenting upon that opinion, rejects the concluding remarks; and SHEPLEY, J., in *Tuttle* v. *Gates*, referring to the same case, observes, "it cannot, however, be admitted that the title of the purchaser, as against the debtor, will depend upon the return of the officer showing that the directions of the law have been observed in the sale of goods capable of a visible possession and delivery; the sheriff must be presumed to have obtained the full value; and, if he did not, through any misconduct, he would be liable to make full compensation to the party injured."

It is true, that, in the cases cited, the Courts were discussing the effect of officers' proceedings on *execution*, but most of the reasons assigned will as well apply to sales on *mesne process* when authorized by law.

We are aware that the numerous American decisions touching the question now under consideration, are conflicting, and apparently irreconcilable, but we think the true rule, as adopted in this State, to be, that a sale of such goods as are in controversy, made by an officer at public auction, on judicial process, he being authorized by law and having an official jurisdiction over the proceedings, will transfer the debtor's title to a *bona fide* purchaser, notwithstanding the directions of the

law may not have been complied with. And, according to the agreement of the parties, *the action is to stand for trial.*

TENNEY, C. J., RICE, APPLETON, MAY and KENT, JJ., concurred.